All right, now the next piece on the docket is Morris v. Union Pacific Railroad Co. Clause No. 5-14-0622. And it's Mr. Gavin. You may proceed. Good morning. May it please the Court, Mr. Barber. My name is William Gavin. I'm here for the appellate plaintiff. And the issue on appeal is whether the trial court's summary judgment in this FBLA case was erroneous. And we hope to demonstrate that the Court's ruling violated the basic principles of the Federal Employer's Liability Act in three distinct ways. First, the trial court did not even consider the plaintiff's allegation and argument in summary judgment that the locomotive where the plaintiff was injured was not a reasonably safe place in which to work, which, of course, is the fundamental basis of an FBLA case. Your opponent makes a point about that, that there is no allegation of negligence in that regard in your complaint. That is true, isn't it? No, sir, of the complaint. I mean, it's just a very general allegation. Yes, sir. And the reason that is so stated is because under the law of the FBLA, if the workplace is not reasonably safe, it's negligence. Those are the holdings of the cases under the FBLA. So that's a standard FBLA allegation. There's no mention, though, of inadequate lighting, anything like that, things you're arguing here on appeal. I'm not sure if there's no allegation of inadequate lighting specifically stated in the complaint, so I'd be hesitant to say yes or no for sure, Your Honor. Counsel, would you speak up a little bit? Yes, sir. They're all recording, and it's just not going to happen. Yes, sir, I will. Thank you. So the argument was to the trial court and, of course, is to this court, is that the absence of adequate lighting in the locomotive in itself made the workplace not reasonably safe. And the fact that the injury happened in the way it did, as opposed to perhaps tripping over something because of inadequate lighting, makes no difference as far as the duty of the railroad to provide a reasonably safe place in which to work. In other words, the FBLA cases state that the railroad need not know the exact mechanism of an injury when it has notice of an unreasonably safe place to work. It need only have noticed that there's a possibility of an injury. And we argued to the trial court, but the trial court did not consider or address in its order of summary judgment that the fact that this locomotive was in a darkened area of the railroad yards, and by direction of the railroad rules, the locomotive was unlighted and could not have been lit because the rules required that the mechanisms be turned to dark, that it created an unreasonably safe place in which to work. And so in that regard, in the first regard, the trial court erred when it granted summary judgment on that point. So your argument would be even if we agreed with the trial court's ruling on the other allegations that you should have been allowed an opportunity to amend if necessary or should be remanded to allow you to amend on this inadequate lighting and so forth? Yes, sir. Okay. Directly so? Yes, sir. That there must be evidence in the same location of similar incidents occurring recently that caused injury. And, in fact, that's essentially what the court's order states. That is a much too broad, much too sweeping statement of the rule of foreseeability. And we derived that position from two Supreme Court cases. Principally, Gallick is cited in the brief, G-A-L-L-I-C-K, which states just that, that the railroad in that case argued that it couldn't be held liable because there was no evidence of prior incidents similar to the one that the plaintiff alleged in that case. And, in fact, the district court gave an instruction on that. And the Supreme Court of the United States rejected the defendant's argument and said that's much too narrow of a rule of foreseeability. The Burns case from the Second Circuit Court of Appeals states that while a jury may take into account the absence of prior similar occurrences, that is, criminal contact, that that's not a requisite for finding a foreseeability. The Inman case, which is a case involving a crossing guard being struck by an automobile, did, in its majority opinion, cite as one of its basis for upholding the ruling below, cite the fact that there had been no prior incidents. But Justice Douglas, in his dissent, joined by three other justices of the Supreme Court, made a very clear statement that prior similar instances occurring in the same location in similar ways is not a requisite for foreseeability. In the case of Gallo's G-A-L-L-O-S-E from the Second Circuit, this is where a worker brought a dog into the workplace. And the Second Circuit held that just by the presence of the dog, the railroad had a duty to provide a more, a safer workplace, whereas the railroad was arguing that there had to be evidence of vicious propensities of that dog, much like our dog bite law in the state of Illinois. But the court held it's much broader than that. And the presence of this dog alone was enough to trigger a duty. And in any event, so. Yes, sir. Tell me, then, what's the evidence in the record that renders it foreseeable that there would be a trespasser attack?  Sorry. No, the evidence is that, is several points, actually. In 2008 or 2009, there was a trespasser discovered on a train being operated by the plaintiff as it came into Villa Grove. In 2007 or 2008, Vernon James, a supervisor, discovered a trespasser on a train coming into Villa Grove, but chose not to report it to the company. Was this on the roof of the train or in the boxcar or something like that? One, I believe, was on a roof, but I don't think we have those details, Your Honor. I thought the brief said it came out of a boxcar. I don't recall that. Okay. But in any event, Vernon James, a supervisor, discovered this trespasser but did not report it in violation of the railroad's rules. Probably most importantly, however, Your Honor, is that when the railroad's police officer, special agent police officer, called Mr. Morris a couple days after the incident to investigate the presence of the trespasser, the police officer, Mr. Magner, M-A-G-N-E-R, stated that the railroad had been receiving notice of trespassers traveling in this corridor between Salem, Illinois, and Chicago, Illinois, on Union Pacific trains because there was an agricultural harvest at some part in Chicago or north of there. So the railroad knew that there were people riding its trains, not just some time in the past, but actively during this period when the incident occurred. So that evidence, which, of course, would be offered for notice and for substantive evidence on the railroad's part, triggered a duty to protect its employees. So the third point I wanted to make, Your Honor, which you brought up, was that even if we accept the trial court's creation of this very narrow exception, there's enough evidence under the FELA rules which give a plaintiff the broadest possible boundaries of allowing a jury to make an inference of negligence. We introduce enough evidence to create an issue of fact to entitle the plaintiff to a summary judgment. Thank you. All right. Thank you, Mr. Gammon. Mr. Harlow? Good morning. May it please the Court. Counsel, I would first like to address a question from the bench regarding the allegations in the complaint. The question was whether there were any allegations regarding light. The answer to that question is no, there is not. The only allegations that we have in the complaint were a statement of the law, a failure to provide a reasonably safe place to work, and then paragraph B through G, deal with third-party trespasses. And when we filed our motion for summary judgment, that's what we addressed, because those were the allegations in the complaint that we were dealing with, and those were the issues that we dealt with in the scope. Was there argument in the trial court about poor lighting or anything like that? Mr. Gammon brought that up at the hearing, but there was nothing at issue in the complaint. And so what we have here is an argument at the hearing on the motion for summary judgment, which, of course, we addressed the allegations that were in the complaint. And just briefly on this lighting issue, certainly the Court has read the facts of this incident, but what Mr. Morris was doing was he brought five locomotives and a train from – or the train was brought from Chicago. They cut the five locomotives off at the Villa Grove Yard, and then they were going to couple onto another locomotive and some more cars, couple back onto the train and come to Salem. So Mr. Morris, after coupling into that sixth locomotive, went on this locomotive to adjust the headlight switch to make the headlight on the sixth locomotive work as the rear headlight. And he comes in, and that locomotive was dead. It was not operating. And so he had his flashlight, and he just simply turned the switch for that headlight. Now, the fact that that locomotive was dead really has no bearing on any of these issues, because once he turned that switch for the headlight, even if that locomotive was on and he turned the light on in the cab, he would have turned that light off as he exited that locomotive and would have walked down the steps where this alleged incident occurred with his flashlight. This is just like the situation if you go into your home, you go into your bedroom, you go do something, you turn on the light, and you get whatever you're doing there, and you leave that room. You're not going to leave that light on. You're going to shut it off and exit the room. You must live in a different family than me. People leave lights on in our house all the time. Ununderstood, Your Honor, but we're dealing with grown-ups rather than poor children. Well, those are all factual issues for a jury to decide anyway, right? Well, as far as the lighting. I mean, what you're talking about there as far as the lighting. I mean, the court's not going to find it's a matter of law that they would have shut the light off before he went down the stairs or that sort of thing.  I understand that there was no specific allegation about lighting and that sort of thing. I mean, your argument is that it's not foreseeable at all, no genuine issue of material fact, no issue about it, not foreseeable, that a trespasser would perhaps attack a worker in an unfenced, unlit railroad yard. Yes, Your Honor, that is our argument. And the argument is based upon the federal case law. And as Mr. Gavin admits in his brief, the trial court and this court is bound by the federal cases dealing with the FDLA law. And the third-party trespasser cases that we have cited, and even the one case, the Burns case, that Mr. Gavin has cited, they spell out what the federal law is regarding foreseeability. And before a jury gets to any question of fact, whether it be lighting or anything else, the court has to decide whether there is a duty. And in these third-party trespasser cases, they have spelled out that you have to have recent incidents, they have to be of the same kind, and they have to be at the same location. And Mr. Gavin has pointed out the Gallup case, which is cited because it talks about a cesspool and an insect bite. In that case, the railroad knew of the cesspool, and it knew that it had insects in that area. So even that case, with foreseeability, the defendant in that case had notice of the condition at the location and of what eventually happened with those insects. And we have cited cases regarding the third-party trespasser law. And one of the most case on point is the Reardon v. Peoria-Pegan railroad case. And in that case, the court, the Central District of Illinois, discusses and cites the Gallup case. So it's a decision that cites this one case that Plano's argument is relying on. And then it says, in that case, the engineer on a train was going by a housing project and was hit in the eye with a bead, a pellet gun. And the court went through the cases, many of which we have cited. I believe the Hartell case was cited in Reardon. And the court said there is no similar incident that happened where this engineer was hit with the pellet gun. There's nothing recent. And the plaintiff in that case tried to present or did present evidence of other incidents further away from the area where this happened. And the court went through the rules regarding third-party trespasser cases. Recent, similar incident, same location, and granted summary judgment. And I submit to you that our case is much stronger than the Reardon case because, as Your Honor asked about the third point, what other evidence is there of any trespassers in the Villa Grove yard? Mr. Gavin indicated, plaintiff indicated a 2008-2009 incident. Just to kind of put a fine point on this, I mean, what the trial court decided was that the railroad had no duty whatsoever to provide any form of security to protect its employees from third-party trespassers. That's what the trial court decided. At that location in Villa Grove. Okay. And if that's the case, then the first person injured by a third-party trespasser could never recover, period. Right? At a location where there was no prior incidents and no similar incidents and nothing in the past. So under that kind of a theory, you know, somebody gets left out. Because, I mean, whenever this gentleman's been injured, there has been a prior similar incident. So there would be a duty now. Do you agree with that? If there was another incident after August 4, 2010. Yes, Your Honor, that is correct. And what the cases talk about is in order to have to balance the burden of the allegations, putting up fences, putting up security guards, putting up somebody on each train, as to the relative. Sure. What about locking the locomotives? Wasn't there a contention that at least the defendant had started a routine of having the locomotives locked if they weren't in use? There was two years later, Your Honor. I thought there was prior to this incident. No. There was a bulletin later, but prior. No, a bulletin and a ruling. I believe plaintiff's affidavit talks about a bulletin at the Salem Yard that came out two years after this. I believe it was in 2013. Okay. There was also a bulletin about locking the lead locomotive if a locomotive concess, which is more than one locomotive, is left outside of guards and terminals. That came out after August of 2010, and that rule wouldn't even apply to this situation because this was not the lead locomotive. It was the fifth one in a six locomotive concess, and they were in the yard at the time. That rule applies to if a train is going to be left outside of rail yards or terminals because, for example, if a train crew can only work 12 hours under the Hours of Service Act and pull into a siding out in the middle of nowhere, they want that lead locomotive locked because that's the locomotive that would, if anybody got into it, operate the other locomotives in the train. If you locked that one, the other ones, even if somebody got in, would not be able to move the train. But those are all after August of 2010. And those would be issues if there was a duty. If the trial court found there was a duty, those go to causation. And, of course, the railroad did not say, you know, we're not arguing with feasibility, so it wouldn't even be relevant anyway. But those were all after the incident. This incident of 2008, 2009, that plaintiff puts in his affidavit, I believe that was a person on top of a rail yard. And there's nothing indicated in that affidavit that the trespasser made it to Bilbro. All the plaintiff says is it was on a train northbound to Bilbro. There's nothing in there that there was a trespasser at Bilbro. Mr. Gavin addressed Vernon James. Vernon James is a manager of terminal operations in Bilbro. And he had a report of a trespasser in a rail car that was coming to a train to Bilbro. The train was stopped before it got to Bilbro. Mr. James called Bilbro police, and the police took care of that trespasser. So I don't know what he—and they did all that even though they had no duty to do anything about it. To get the trespasser off the train. Yes, sir. Now, the thing to keep in mind, the thing to keep in mind is we're not talking about just the trespasser on a train. The cases say it has to be the same type of incident, which means a trespasser assaulted someone. I was pretty unclear as to what the assault was all about. Was it a deliberate assault? Did he knock him over trying to exit? What Mr. Moore did was after he did that headlight switch, he would then go down two steps to an area where there's a doorway, where he would then exit the locomotive out of the nose of the front of the locomotive. The alleged—the trespasser was in this area going down the steps to go to the nose. And when Mr. Morris, according to his testimony, was going down in that area, the trespasser came out and startled Mr. Morris, and I think the testimony may have pushed him. And he went back and said he didn't—I don't think he fell, but he was—he caught himself before he hit the floor of the cabin. That's what I know. So according to your understanding of the law with respect to foreseeability, it has to be a very, very closely aligned type of assault. So it seems to me you're taking a very broad remedial statute and making it more narrow than common law foreseeability. Your Honor, I'm not doing that. The cases that we cite are doing that. The Reardon case, the Hartzell case, these other cases that we cite, and what those cases say in this situation, a third-party trespasser situation, they actually—there's language that says we're going to apply stricter standards regarding this duty of foreseeability. And that's the case—not me, it's the case law that says that. And that's—the reason they're getting it, Your Honor, is you have to balance this. I mean, in order to—one of the allegations are fencing the railroad guard, fencing the railroad right-of-way, patrolling the railroad right-of-way. I mean, the trains, they go not only from railroad yards, but make stops as they go from point A to point B. And the balance in here is how can you do that if you don't have foreseeability in what the cases have told you? I think that's the point. You don't even get to that. I mean, the jury would not hear the evidence and say, well, under the circumstances, I don't think they were negligent by not fencing it. I don't think they were negligent by not providing security guards. I don't think they were negligent by doing various other things. But we never even get to that kind of a balancing point because, you know, at this point, a judge has determined that there is no duty. Therefore, under no circumstances could there be any negligence. In this particular case, Your Honor, that is correct because the trial court correctly performed its function regarding foreseeability. According to the case law, it found there was no duty. Now, if the trial court found that it was foreseeable, then it goes to the jury regarding fencing, police, et cetera. But there's no, I don't think there's any dispute here that the court, the trial court, determines whether there is a duty, whether it was foreseeable. Yet, again, it's not me. It's the cases. Yet, both parties have conceded and put in their grace that under this scenario, the federal case law controls. And in this particular area of the law regarding third-party trespassers, you have all these cases. I believe Mr. Gavin talked about the Burns case. In that case, the court went over these rules regarding prior incidents. The Inman case is a Supreme Court case. And whether it's five to four, that's the law. And I'm not sure about the Scalise case with the dog case. But, again, a lot of the cases cited by plaintiffs in the brief deal with the general principles of the FDLA and not third-party trespasser cases. And we don't really have any argument with these statements of the law. But when we get to the cases that deal with third-party trespasser cases, for example, that Burns case. In that case, I believe that there was evidence that there were prior incidents where that incident occurred. And so the court found a duty. Your argument is there would have to have been an attack. In other words, it wouldn't matter if they saw trespassers out there every day, all day, drinking beer, talking, whatever. If there was no attack on an employee, it still would not be foreseeable because it has to be a similar incident. A similar type of injury or hazard is what the case is talking about. But more importantly, Judge, if you look at what was the argument there and put it in the briefs, we don't have anything at Bill O'Groat. There's nothing at Bill O'Groat. All right. Thank you, Mr. Harlan. Rebuttal? Your Honor, plaintiff did make the argument to the trial court about the lack of a reasonably safe place in which to work. That's found in the record in pages 291 and 1032. But as to this narrow exception that's been created by the trial court, there are only two federal appellate level courts cited by the defendant that have held that. And those are the Hartell case and the Gibbons case. And if we compare the reasoning in those cases, they just cannot stand against the Supreme Court's discussion in Gallick and the Circuit Court of Appeals discussion in Gallows and Burns, which are based on a more traditional, broader scope of determining a duty under foreseeability. In fact, the Burns case says, in this case, the defendant maintains and the district court agreed that there was no negligence because the injury was not foreseeable. As Gallick attests, foreseeability of harm is no less a matter generally left to the jury's broad discretion than any other part of the requisite proof to recover under the appellate. So this narrow exception just cannot stand against the declarations of the Supreme Court in Gallick. The inmate opinion does not stand for the proposition that the trial court created in this case. It merely referenced the fact that there was no evidence of prior similar occurrences as one of the reasons for its basis for its opinion. In the Reardon case, most importantly, what was not presented to you was that it was appealed to the Seventh Circuit Court of Appeals, which did not affirm it on the basis of the district court's holding, but affirmed it on the basis of the reasoning in Burns and Justice Douglas' dissent. That is a traditional balancing of potential harm versus the ease of presenting that, which brings us to the importance of the locking evidence. And that evidence shows that the defendant could have easily prevented this without any burden whatsoever by utilizing the locks that were in place on its locomotives. One other troubling thing in the trial court's order is a statement, the court agrees with the recitation of evidence set forth in defendant's reply, which strongly suggests, to me anyway, that the court was evaluating the merits of the evidence. And if it did so, it violated the standard of review for a motion for summary judgment, which is simply to determine whether it's an issue of fact, not to resolve conflicting fact. If there are no other questions, Your Honor, we request that the trial court's summary judgment be reversed and the case be remanded for trial. All right. Thank you, Mr. Gavin. Thank you both for your briefs and arguments. We'll take this matter under advisement and issue a decision in due course. All right. We'll take a brief recess and be back at 10 o'clock.